1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  AZIZEH R., | Case No.:  20cv2016-MDD |
| 12                          Plaintiff, | **ORDER RESOLVING JOINT** |
| 13  v. | **MOTION FOR JUDICIAL REVIEW** |
| | **AND AFFIRMING THE** |
| 14  KILOLO KIJAKAZI,[1] *Acting* | **COMMISSIONER'S FINAL** |
| 15  *Commissioner of Social Security*, | **DECISION** |
| 16                          Defendant. | |
| 17 | [ECF No. 15] |

18          Azizeh R. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for

19  judicial review of the final administrative decision of the Commissioner of the

20  Social Security Administration ("Commissioner") regarding Plaintiff's Title

21  XVI application for Supplemental Security Income.  (ECF No. 1).  The ALJ

22  found that Plaintiff was disabled between June 24, 2011 and September 2,

23  2015, but denied Plaintiff's claim for benefits from September 3, 2015

24

25  _____

26  [1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is
therefore substituted for Andrew M. Saul as the Defendant in this action. *See* 42 U.S.C. §
27  405(g); Fed. R. Civ. P. 25(d).

through the date of the decision, August 10, 2020.  (AR at 467-88).[2]  On October 25, 2021, the parties filed a Joint Motion for Judicial Review of the ALJ's decision.  (ECF No. 15).

For the reasons expressed herein, the Court **AFFIRMS** the Commissioner's decision.

## I.      BACKGROUND

### A.    Procedural History

This case arises out of Plaintiff's two applications for Supplemental Security Income, filed under Title XVI of the Social Security Act.  Plaintiff's initial claim, filed on June 24, 2011, was remanded to an ALJ by the Ninth Circuit.  *See Rashidi v. Berryhill*, 703 F. App'x 569 (9th Cir. 2017) (reversing and remanding the case to allow the ALJ to follow up with the VE to determine whether the jobs of sorter, stuffer, and polisher require both hands).  Plaintiff's second claim was filed on September 17, 2014.  (AR at 1072-82).  Following the Ninth Circuit's order remanding the case, the Appeals Council ordered the ALJ to consolidate Plaintiff's claims, associate the evidence, offer the opportunity for a hearing, and decide the consolidated claims.  (AR at 611).

Accordingly, an administrative hearing was held on February 13, 2020.  (AR at 502-54).  Plaintiff appeared and was represented by attorney Lawrence Rohlfing at the hearing.  (AR at 504).  Testimony was taken from Plaintiff and Nelly Katsell, an impartial vocational expert ("VE").  (*See* AR at 502-53).  The ALJ issued a partially favorable decision on the consolidated claims.  (AR at 467-88).  The ALJ granted benefits from June 24, 2011 to

---

[2] "AR" refers to the Certified Administrative Record filed on March 18, 2021.  (ECF No. 12).

September 2, 2015, but found Plaintiff was not disabled from September 3, 2015 onward.  (*Id.*).

Plaintiff filed exceptions to the ALJ decision on remand; however, the Appeals Council did not invoke own motion review within 60 days of the decision and the ALJ decision thus became the final decision of the Commissioner on October 4, 2020.  (*See* ECF No. 15 at 3).  This timely civil action followed.

## II.   **DISCUSSION**

### A.   **Legal Standard**

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Courts look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id.*  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme Court] has said, is 'more than a mere scintilla.'  It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.*  The Ninth Circuit explains that substantial evidence is "more than a mere scintilla but may be less than a preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other*

*grounds*.

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id.* "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes*, 276 F.3d at 459.

Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

## B.    Summary of the ALJ's Findings

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 24, 2011. (AR at 471).

At step two, the ALJ found that from June 24, 2011 through September 2, 2015, Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; osteoarthritis affecting the shoulders, knees, wrists, and feet; migraine

headaches; major depressive disorder; and generalized anxiety disorder." (*Id.*).  The ALJ determined that Plaintiff's current severe impairments are the same.  (*Id.* at 476).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments.  (AR at 472 and 476).

The ALJ accepted the prior, unreversed ruling regarding Plaintiff's RFC for the period of June 24, 2011 through October 26, 2012.  (AR at 472).  After reviewing the prior RFC finding and the subsequent record, the ALJ determined that from June 24, 2011 through September 2, 2015, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 416.967(a) with the following limitations:

> [S]he could lift, carry, push, and/or pull up to twenty pounds occasionally and ten pounds frequently with her left upper extremity. She could stand and/or walk for two hours in an eight-hour workday. She could sit for six hours in an eight-hour workday. She could never climb ladders, ropes, or scaffolds. She could frequently bend, stoop, and crouch. She could occasionally kneel and crawl. She could occasionally walk on uneven terrain or unprotected heights. She could occasionally use her right upper extremity for fine and gross manipulative movements. She was limited to unskilled work.

(*Id.*).

The ALJ determined that medical improvement occurred as of September 3, 2015, ending Plaintiff's period of disability.  (AR at 478).  The ALJ determined that, beginning September 3, 2015, Plaintiff had the RFC to perform light work as defined in 20 CFR 416.967(b) where she can lift and/or carry up to twenty pounds occasionally and ten pounds frequently with the following limitations:

She can sit, stand, and/or walk for six hours each in an eight-hour workday. She can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps or stairs but never climb ladders, rope or scaffolds. She can frequently reach, handle, finger, and feel, bilaterally. She must avoid dusts, odors, fumes, allergens, and other respiratory irritants. She needs to avoid work at unprotected heights and around dangerous moving machinery. She needs to avoid work that requires driving as a duty of the job. She needs to avoid a loud noise environment. She is limited to simple, routine tasks. She can occasionally interact with co-workers and supervisors. She cannot interact with the public. She requires a stable workplace in which any changes in the work environment or work routine are gradually introduced.

(AR at 479).

The ALJ stated that his RFC assessments were based on all the evidence and the extent to which Plaintiff's symptoms are consistent with the objective medical evidence and other evidence. (AR at 472). The ALJ also stated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. 416.927. (*Id.*).

The ALJ then proceeded to step four of the sequential evaluation process and found that Plaintiff has not performed a position within the past fifteen years for earnings at a level that constitutes substantial gainful activity. (AR at 475, 487).

For the purposes of his step five determination, the ALJ accepted the testimony of the VE. (AR at 487-88). The VE identified the jobs of Conveyor Bakery Worker (DOT No. 524.687-022); Iron Zipper (DOT No. 590.685-042); and Shipping and Receiving Weigher (DOT No. 222.387-074) as jobs Plaintiff could perform as of September 3, 2015, and which exist in significant numbers in the national economy. (*Id.*). The ALJ therefore found that Plaintiff's disability ended on September 3, 2015 and Plaintiff has not become disabled again. (AR at 488).

1

### C.   Issues in Dispute

2     The issues in dispute are: (1) whether the vocational expert provided a

3 basis for reliable testimony; (2) whether the ALJ properly resolved conflict in

4 the vocational evidence; and (3) whether the ALJ's decision arose from an

5 unconstitutional delegation of authority and violated Plaintiff's due process

6 rights.

7     ### 1.   Vocational Expert's Basis for Reliable Testimony

8     Plaintiff argues substantial evidence does not support the ALJ's

9 decision at step five because when asked at the hearing, the VE did not

10 provide a reliable methodology for assessing job numbers.  (ECF No. 15 at 8).

11 Defendant counters that in the Ninth Circuit, challenges to VE methodology

12 in evaluating job numbers have been "uniformly rejected."  (*Id.* at 9).

13     "A VE's recognized expertise provides the necessary foundation for his

14 or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)

15 (clarifying that no additional foundation is required).  Also, "[a]n ALJ may

16 take administrative notice of any reliable job information, including

17 information provided by a VE." *Id.* (citing *Johnson v. Shalala*, 60 F.3d 1428,

18 1435 (9th Cir. 1995)).  "Given its inherent reliability, a qualified vocational

19 expert's testimony as to the number of jobs existing in the national economy

20 that a claimant can perform is ordinarily sufficient by itself to support an

21 ALJ's step-five finding." *Ford v. Saul*, 950 F.3d 1141, 1160 (9th Cir. 2020)

22 (citing *Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999) ("[T]he

23 Commissioner [can] meet the burden of showing that there is other work in

24 'significant' numbers in the national economy that [a] claimant can perform

25 . . . by the testimony of a vocational expert.").

26     However, "VE testimony is not incontestable." *Buck v. Berryhill*, 869

27 F.3d 1040, 1051 (9th Cir. 2017).  "[A]n applicant may probe the strength of

testimony by asking an expert about (for example) her sources and methods—where she got the information at issue and how she analyzed it and derived her conclusions." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1156 (2019).  Whether VE testimony constitutes substantial evidence is assessed on a case-by-case basis, considering all features of the VE testimony as well as the remainder of the administrative record.  *Id.* at 1157.  In this assessment, the court "defers to the presiding ALJ, who has seen the hearing up close."  *Id.*

Plaintiff's argument is based on her counsel's examination of the VE at the February 13, 2020 hearing, as excerpted below:

> Q: Okay.  Can you tell us briefly your methodology for estimating job numbers?
> A: Well, I basically have a knowledge of DOTs with – let me just -- hold on. Let me get organized here. May I have a minute and I'll tell you? Just a minute please. I've got a lot of stuff going here. So we do refer to the -- basically not only the DOT but the occupational titles and as well we do validation of statistics of physical limitations and as well we -- where did it go? Hold on please. US Bureau of Labor Statistics and Occupational Employment Quarterly and US [INAUDIBLE] Publishing and --
> Q: What was the last one?
> A: -- DDD, and we draw the interpretations and we basically figure out where the numbers come from and estimate all that and figure out where and how the three can conclude.

(AR at 548-49).

Upon further questioning, the VE clarified that when she said "Bureau of Labor Statistics" she was referring to both the employment projections that are reported by the Occupational Outlook Handbook and the occupational employment statistics that BLS reports elsewhere. (AR at 549).  Plaintiff's counsel also questioned the VE about whether the Occupational Employment Quarterly was a private publication. (AR at 550).  The VE believed this was a government publication.  (*Id.*).

Plaintiff submitted a post-hearing brief objecting to the VE's testimony pertaining to the number of jobs that exist in the national economy.  (AR at 1259-68).  Plaintiff argued that the VE "could not identify a methodology with any particularity for discerning the number of jobs that exist in the national economy."  (*Id.*).  The ALJ explicitly overruled this objection and explained:

> The regulations indicate that sufficient basis for vocational expert testimony can be professional knowledge and experience, as well as reliance on job information available from various government publications or other publications the Social Security Administration takes notice of (20 CFR 404.960 and 404.966).  In this case, the vocational expert's professional knowledge and experience is substantial, including over twenty-five years of experience in the field of vocational rehabilitation (*See* Exhibit 38E).

(AR at 468).

In the Joint Motion, Plaintiff presents a more developed version of her methodology argument.  (ECF No. 15 at 5-8).  Plaintiff relies on non-binding caselaw from outside the Ninth Circuit to support her argument.  (*Id.* at 7-8) (citing *Brace v. Saul*, 970 F.3d 818 (7th Cir. 2020); *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020)).  In *Brace*, the Seventh Circuit remanded Plaintiff's case where the Court found the VE's methodology testimony to be "inscrutable" and determined that the VE either relied on a flawed "equal distribution method," or an impermissibly vague "weighting." *See Brace*, 970 F.3d at 819, 821-23.  In *Goode*, the Eleventh Circuit remanded Plaintiff's case for a new hearing where the VE cited job numbers from the wrong SOC group code.  *See Goode*, 966 F.3d at 1282.  Plaintiff argues this Court should not create a conflict with these Seventh and Eleventh Circuit decisions.  (ECF No. 15 at 10).

This case is distinguishable from *Brace* and *Goode* because the VE's response here was comprehensible, and Plaintiff identifies no major flaws in

her methodology.  Further, Plaintiff fails to provide authority from this Circuit that persuades the Court that the VE's methodology explanation was so lacking that it precludes her job numbers testimony from constituting substantial evidence.

VE testimony regarding job numbers has been upheld in this Circuit based on a record that was less compelling than the record at issue here.  *See Frayer v. Berryhill*, No. 2:17-cv-2437-EFB, 2019 U.S. Dist. LEXIS 41883, at *9-10 (E.D. Cal. Mar. 14, 2019) (upholding the VE's job numbers testimony despite finding the VE's methodology explanation that "she looked to information compiled by the BLS" to be unclear).  In *Frayer*, the Court noted that an alternative interpretation of the VE's stated methodology was that she used BLS data in conjunction with her labor market experience to estimate job numbers.  *Id.* at 10.

Here, the VE's testimony regarding her methodology is more specific than simply looking to BLS information and the ALJ appears to have determined that further questioning regarding the VE's methodology was unnecessary.  (AR at 549-50).  *See also Biestek*, 139 S. Ct. at 1157 (explaining that in "tak[ing] into account all features of the vocational expert's testimony, as well as the rest of the administrative record," the Court "defers to the presiding ALJ, who has seen the hearing up close.").  The VE explained that she refers to the DOT and occupational titles, validates statistics of physical limitations, references the employment projections reported in the Occupational Outlook Handbook and additional occupational employment statistics reported by the U.S. Bureau of Labor Statistics, uses U.S. Publishing's Occupational Employment Quarterly, draws interpretations, and comes up with estimates.  (*See* AR at 549-50).  Further, a VE's obligation to provide Plaintiff with desired information supporting the VE's job numbers

1    estimate is limited.  *See Biestek*, 139 S. Ct. at 1157 (explaining that

2    sometimes, "[e]ven though the applicant might wish for [the data supporting

3    the VE's job numbers], the expert's testimony still will clear (even handily so)

4    the more-than-a-mere-scintilla threshold.").

5         While Plaintiff highlights the VE's flawed belief that the Occupational

6    Employment Quarterly is a government publication, she provides no

7    authority demonstrating that this or any other mistake warrants remand,

8    and the Court declines to discredit the VE's testimony based on this

9    misunderstanding.[3]  (ECF No. 15 at 6-7).  VEs regularly utilize the

10   Occupational Employment Quarterly in order to determine the availability of

11   jobs in the economy.  *See, e.g.*, *Tracey Anne P. v. Kijakazi,* No. 20cv1163-

12   LAB(RBB), 2021 U.S. Dist. LEXIS 207430, at *34 (S.D. Cal. Oct. 27, 2021);

13   *Anaya v. Berryhill*, No. ED CV 17-769-PJW, 2018 U.S. Dist. LEXIS 32838, at

14   *12 (C.D. Cal. Feb. 27, 2018) ("This resource is frequently used by vocational

15   experts in social security cases to obtain jobs numbers.").  *See also Shaibi v.*

16   *Saul, No. 1:18-cv-00056-BAM, 2019 U.S. Dist. LEXIS 129753*, at *17-18 (E.D.

17   Cal. Aug. 1, 2019) (upholding the VE's testimony regarding job numbers

18   where the VE relied on the U.S. Publishing data to calculate job numbers but

19   was not able to explain the methodology used by U.S. Publishing).

20        Based on the foregoing, Plaintiff has not persuaded the Court that

21   the VE's stated methodology precludes her job numbers testimony from

22   constituting substantial evidence.

23

24

25   [3] Plaintiff's Reply regarding the methodology issue also indicates that the VE presented
     conflicting evidence.  (ECF No. 15 at 10).  Conflict in the VE testimony is relevant to
26   whether it meets the threshold of substantial evidence.  *See Ford v. Saul*, 950 F.3d 1141,
     1159 (9th Cir. 2020).  Following the organization of the parties' Joint Motion, the Court
27   addresses this issue separately below.  (ECF No. 15 at 10).

20cv2016-MDD

## 2.   Conflict in the Vocational Evidence

Plaintiff argues the vocational information she submitted in her post-hearing brief raised conflicts with the VE's testimony that the ALJ was obligated to address.  (ECF No. 15 at 11-15).  Defendant argues that Plaintiff's lay analysis of Job Browser Pro data does not undermine the VE's testimony, and any errors regarding Plaintiff's ability to perform the suggested occupations were harmless.  (*Id.* at 16-18).

Where there is a striking discrepancy in the record, the ALJ may be required to address the inconsistency on remand.  *See Buck*, 69 F.3d at 1052 (remanding based on an unaddressed inconsistency where Plaintiff's counsel used the same methodology as the VE and found a vastly different number of jobs).  But "where the expert is qualified and presents cogent testimony that does not conflict with other evidence in the record," the VE's testimony will clear the more-than-a-mere-scintilla threshold.  *Ford*, 950 F.3d at 1159.  For the reasons expressed below, the Court finds there was no "striking discrepancy" or conflict that warrants remand of Plaintiff's case.

### a. Conflict with Non-DOT Sources

Plaintiff argues that the data sources identified by the VE do not support the VE's testimony, and that the ALJ was required to resolve the conflict between national BLS job numbers and the VE's local experience. (ECF No. 15 at 14-15).  In support, Plaintiff references vocational information enclosed within Plaintiff's rebuttal brief, consisting of approximately 500 pages of printouts from OCCU COLLECT and the U.S. Bureau of Labor Statistics website.  (*See* AR at 1259-1768).

Remand is not warranted where, "[a]t best, Plaintiff has presented evidence sufficient to support an alternative finding regarding the number of relevant jobs available in the economy."  *Gardner v. Colvin*, 2013 U.S. Dist.

LEXIS 28907, at *9 (C.D. Cal. Mar. 1, 2013).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  *See also Merryflorian*, No. 12-cv-2493-IEG (DHB), 2013 U.S. Dist. LEXIS 127615, at *16-17 (S.D. Cal. Aug. 15, 2013) ("[P]laintiff's lay assessment of the raw vocational data derived from Job Browser Pro does not undermine the reliability of the vocational expert's opinion, which the ALJ adopted at step five.") (quoting *Valenzuela v. Colvin*, No. CV 12-0754-MAN, 2013 U.S. Dist. LEXIS 73439, at *11 (C.D. Cal. May 23, 2013)).

Plaintiff does not dispute the VE's qualifications.  (*See* AR at 1257-58) (listing Ms. Katsell's experience in the field of vocational rehabilitation from 1986 to present and specifically as a VE testifying in Social Security Disability Court in San Diego, California since 2005).  Nor does Plaintiff provide expert testimony to refute the VE's testimony.  (ECF No. 15 at 10-15).

Instead, Plaintiff first appears to argue that the ALJ should have addressed the tension between the SOC codes provided by the DOT-O*NET Crosswalk and Job Browser Pro for the Bakery Worker, Conveyor Line position.  (*See* AR at 1468 (providing hyperlink to the O*NET OnLine DOT Crosswalk which lists the SOC Code 51-9199 Production Workers, All Other); AR at 1527 (providing Job Browser Pro data which lists the SOC Code 51-3099 Food Processing Workers, All Other)).  These sources were both submitted by Plaintiff, and not mentioned by the VE.  (ECF No. 15 at 13). The Court sees no reason for this conflict to disturb the VE's testimony, especially where there is no indication the VE relied on the wrong SOC code in assessing job numbers.  *See Goode*, 966 F.3d at 1282 (remanding based on

the VE's erroneous testimony that the Bakery Worker (524.687-022) position corresponded to the SOC group for "Food Processing Workers, All Other.").

Plaintiff also argues that the industry-specific job numbers estimates for the Bakery Worker, Conveyor Line and Ironer[4] positions submitted in her post-hearing brief created a conflict in the evidence that the ALJ was required to address.  (ECF No. 15 at 13-15).  Plaintiff's argument relies on one unpublished Ninth Circuit decision.  (*See* ECF No. 15 at 14) (citing *Erickson v. Saul*, 840 F. App'x 167, 168 (9th Cir. 2021)).  Plaintiff explains that the Bakery Worker, Conveyor Line and Ironer positions fall under the Production Worker SOC Code, along with 1,588 other DOT codes.  (ECF No. 15 at 13-14).  Accordingly, Plaintiff argues that based on the statistics she submitted, only 14,700 production workers work in any food-related industry, and 1,940 work in bakeries and tortilla manufacturing.  (*Id.*).  She likewise argues Job Browser Pro provides that 4,691 production workers work in the miscellaneous manufacturing industry, with only 19 of those jobs applicable to the Ironer position.  (*Id.*).

The VE testified that there were 35,000 Conveyor Bakery Worker positions and 22,000 Iron Zipper positions, and the ALJ adopted her testimony.  (*See* AR at 487-88 and 537).  Plaintiff appears to argue that the VE's job numbers are inflated because they do not account for the industry designation of the jobs.  (ECF No. 15 at 14).  Plaintiff further argues that two of the data sources identified by the VE do not support her job numbers testimony.  (*Id.*).

At the hearing, the VE testified that she used both employment

---

[4] At the hearing, the VE explained that the "Iron Zipper" position she testified about is called "Ironer" in the DOT.  (AR at 546).

projections and occupational employment statistics (in addition to other sources) in order to estimate job numbers.  (AR at 549).  She testified that she used 2017 data.  (*Id.*).  Plaintiff's lay interpretation of allegedly conflicting BLS Employment Projections providing 2018 employment numbers and BLS Occupational Employment Statistics reported by OCCU COLLECT for an unspecified year does not convince the Court that the VE's testimony fails to meet the threshold for substantial evidence.  The Court is inclined to follow the numerous decisions in this Circuit which find lay analysis of occupational data is not compelling.  *See, e.g.*, *Kirby v. Berryhill*, No. SA CV 18-497-E, 2018 U.S. Dist. LEXIS 174698, at *12-13 (C.D. Cal. Oct. 10, 2018) (collecting cases).

Other courts have also rejected similar industry-specific arguments. *See id.* at *11-12 (rejecting Plaintiff's argument that the VE's job numbers for two "production worker" DOT occupations were inflated where Plaintiff relied on her own interpretation of job numbers listed by Job Browser Pro and the OOH); *Munroe v. Colvin*, No. 13-cv-03897-MEJ, 2014 U.S. Dist. LEXIS 164252, at *26-27 (N.D. Cal. Nov. 24, 2014) (rejecting Plaintiff's argument that, rather than accepting the VE's job numbers, the ALJ should have relied on Department of Labor statistics for "production workers, all others" and reduced the estimates based on relevant subcategories, to conclude that there were only 650 applicable jobs available nationally).  Accordingly, the Court finds that Plaintiff's lay analysis of job numbers data regarding the Bakery Worker, Conveyor Line and Iron Zipper positions did not present a striking discrepancy or apparent conflict that the ALJ was required to resolve.

Plaintiff next appears to argue that the physical demands of "Production Workers, All Other" positions are incompatible with Plaintiff's RFC.  (ECF No. 15 at 15).  The O*NET OnLine DOT Crosswalk Search lists

20cv2016-MDD

the SOC Code for Production Workers, All Other (51-9199.00) as one of the SOC Codes corresponding with the positions of Bakery Worker, Conveyor Line (DOT Code 524.687-022) and Ironer (DOT Code 590.685-042). Plaintiff argues the data she supplied shows that "[p]roduction workers engage in medium work in 63.9% of jobs," "53% of production workers engage in unskilled work," and "[p]roduction workers stood/walked at least 6.75 hours per day." (*See* ECF No. 15 at 15). However, as Plaintiff acknowledges, "Production workers contained 1,590 DOT codes." (*Id.* at 14).

Even if accepted, these statistics do not foreclose the possibility that Plaintiff can perform the Production Worker jobs specific to Bakery Worker, Conveyor Line and Iron Zipper positions as they exist in the national economy. For one, Plaintiff's statistics regarding standing/walking requirements only show that at the 25th percentile, Production Workers, All Other stand/walk for approximately 6.75 hours. (*See* AR at 1495). For the period at issue here, Plaintiff "can sit, stand, and/or walk for six hours each in an eight-hour workday." (*See* AR at 479). Plaintiff's RFC can be read to mean she could stand for up to six hours and walk for up to six hours in the same day. Further, Plaintiff cites no information from the DOT that indicates the demands of these positions exceed Plaintiff's RFC. (ECF No. 15 at 10-15).

The Court finds Plaintiff did not provide probative evidence demonstrating a conflict that the ALJ was required to address. A reasonable mind could accept the VE's testimony as adequate to support the conclusion that even given her RFC, Plaintiff was capable of performing Production Worker jobs specific to the Bakery Worker, Conveyor Line and Iron Zipper positions which exist in significant numbers. Accordingly, the Court affirms the ALJ's decision to accept the job numbers testimony of the VE regarding

the Bakery Worker, Conveyor Line and Iron Zipper positions.

### b. Conflict with the DOT

Plaintiff also argues that there was an apparent conflict between the VE's testimony and the DOT regarding the proposed occupation of Shipping and Receiving Weigher.  (ECF No. 15 at 11).  Where there is an apparent conflict between a VE's testimony and the DOT, the ALJ must investigate and resolve the conflict.  *See* SSR 00-4p, 2000 SSR LEXIS 8; *Lamear v. Berryhill*, 865 F.3d 1201, 1206-07 (9th Cir. 2017).

Plaintiff's RFC limits her to "simple, routine tasks" yet the DOT defines the Shipping and Receiving Weigher position as requiring Reasoning Level 3.  (*See* AR at 479, DICOT 222.387-074).  The Ninth Circuit has determined "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (remanding for the ALJ to resolve this conflict where both proposed jobs had a Level 3 Reasoning requirement).  Like in *Zavalin*, the ALJ here failed to identify any conflict and the conflict with the DOT was left unresolved.  Accordingly, the Court finds the ALJ erred.  Next, the Court must determine whether the error was harmless.

Harmless error only occurs if the error is inconsequential to the ultimate nondisability determination.  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).  Errors that do not affect the ultimate result are harmless.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).  Here, the ALJ also accepted the testimony of the VE regarding other jobs existing in significant numbers which did not require Level 3 Reasoning.  *See Shaibi v. Berryhill*, 883 F.3d 1102, 1110 n.7 (9th Cir. 2018) (finding the ALJ's failure to recognize and resolve this conflict was harmless error where the ALJ also

1
2
3
4
5
6

identified other occupations that constitute a significant amount of work in the regional and national economies).  Specifically, the VE testified that the occupation of Conveyor Bakery Worker has approximately 35,000 positions in the national economy, and the Iron Zipper position has approximately 22,000 positions in the national economy, totaling 57,000 positions.  (AR at 537). Plaintiff did not successfully challenge this testimony.

7
8
9
10
11
12
13
14
15
16
17
18
19

While there is no bright line number to reference in determining whether the representative jobs exist in "significant numbers," other courts have found substantial evidence at step five based on job numbers below 45,000.  *See, e.g.*, *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 527-29 (9th Cir. 2014) (25,000 jobs nationally "presents a close call" but is sufficient to show work exists in significant numbers in the national economy); *Shawn P. v. Kijakazi*, No. 20cv1054-MSB, 2021 U.S. Dist. LEXIS 187160, at *13 (S.D. Cal. Sep. 28, 2021) (finding harmless error at step five despite a conflict with the DOT where the VE testified that the remaining two jobs totaled 42,000 jobs in the national economy); *Anna F. v. Saul*, No. ED CV 19-511-SP, 2020 U.S. Dist. LEXIS 224073, at *13-15 (C.D. Cal. Nov. 30, 2020) (finding harmless error where the remaining two jobs provided by the VE totaled 21,100 jobs in the national economy).

20
21
22
23

Accordingly, the Court finds that the existence of 57,000 Conveyor Bakery Worker and Iron Zipper positions illustrates that the representative jobs exist in significant numbers, even without the Shipping and Receiving Weigher positions being taken into account.[5]  The VE's remaining testimony

24
25
26
27

-------

[5] Plaintiff makes additional arguments regarding job numbers and contact with the public as they relate to the Shipping and Receiving Weigher position.  In light of the Court's finding that significant numbers of Conveyor Bakery Worker and Iron Zipper positions

20cv2016-MDD

1   provides substantial evidence to support the ALJ's step five finding that

2   Plaintiff "has been capable of making a successful adjustment to work that

3   exists in significant numbers in the national economy."  (AR at 488).

### 3.   Delegation of Authority

4

5        Plaintiff also makes a constitutional argument that her due process

6   rights were violated because the Social Security Commission was "proceeding

7   in an unconstitutional framework during the tenure of Commissioner Saul."

8   (ECF No. 15 at 23).  She concedes that the ALJ in this case was properly

9   appointed, but argues her case should be remanded due to the possibility that

10  her administrative proceedings were tainted by Commissioner Saul

11  remaining in office in violation of the Constitution.  (ECF No. 15 at 23, 33).

12  Defendant argues that this case should not be remanded because Plaintiff

13  does not sufficiently show that the outcome of her case was altered by the

14  Commissioner's unconstitutional position.  (*Id.* at 24).

15       Other district courts in the Ninth Circuit have addressed similar

16  constitutional arguments.  *See, e.g.*, *Jesus V.O. v. Kilolo Kijakazi*, No. 2:20-

17  CV-05536 (VEB), 2021 U.S. Dist. LEXIS 200515, at *15-16 (C.D. Cal. Oct. 18,

18  2021) ("Plaintiff suggests . . . *Collins v. Yellen*, 141 S.Ct. 1761, 1783-84, 210

19  L. Ed. 2d 432 (2021) and *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2192, 207

20  L. Ed. 2d 494 (2020), as well as an opinion issued by the White House's Office

21  of Legal Counsel ('OLC'), cast doubt on the constitutionality of the statute

22  under which Andrew Saul (who was Commissioner of Social Security when

23  the Appeals Council denied his request for review) was appointed.").

24  Numerous courts have deemed this argument "to be without merit or

25

26  ──────────────────

27  exist in the national economy, the Court finds any error regarding the Shipping and
    Receiving Weigher position was harmless.

concluded that the claimant lacked standing." *Id.* (collecting cases).

Here, Plaintiff argues there is a strong possibility she was "wrongfully deprived of [her] due process rights through Mr. Saul's politicization and undermining of disability benefits during his tenure" based on a statement from a White House official which was published in the Washington Post. (ECF No. 15 at 34-35) (stating that "Commissioner Saul has undermined and politicized Social Security disability benefits" and "reduced due process protections for benefits appeals hearings."). On this basis, Plaintiff argues she "has proven the possibility of compensable harm warranting remand for reconsideration of the claim." (*Id.*).

The Court disagrees. Plaintiff received a partially favorable decision on August 10, 2020. (AR at 458-88). Plaintiff fails to identify a connection between the allegedly unconstitutional tenure protection of Commissioner Saul and the partial denial of Plaintiff's disability benefits claim by a properly appointed ALJ. "[A] conclusory allegation that due process was denied is not sufficient to raise a colorable constitutional claim." *Michele T. v. Comm'r of Soc. Sec.*, No. 3:20-cv-06085-JRC, 2021 U.S. Dist. LEXIS 222300, at *17 (W.D. Wash. Nov. 17, 2021) (citing *Hoye v. Sullivan*, 985 F.2d 990, 992 (9th Cir. 1992)). Accordingly, remand of Plaintiff's case is not warranted. *See also Frank W. v. Kijakazi*, No. 20cv1439-KSC, 2021 U.S. Dist. LEXIS 227031, at *9 (S.D. Cal. Nov. 23, 2021) (explaining that while *Seila Law*, *Collins*, and the Memorandum Opinion indicate that "Section 902(a)(3) of Title 42 is like the statutory removal provisions at issue in these cases and likely violates separation of powers, because it restricts the President's power to remove the Commissioner of the SSA . . . . that does not mean the adjudication of plaintiff's disability claim was 'infected,' 'tainted,' or decided 'under an unconstitutional delegation of authority.'").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### III.   **CONCLUSION**

Based on the foregoing, the Court **ORDERS** the Joint Motion be **GRANTED** in favor of the Commissioner.  Accordingly, the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated:   December 22, 2021

Hon. Mitchell D. Dembin
United States Magistrate Judge